UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LINFORD CUTHKELVIN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. CV 13-5655 FFM

MEMORANDUM DECISION AND ORDER

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for a period of disability, disability insurance benefits, and supplemental security income benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the August 15, 2013 Case Management Order, on May 22, 2014, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the JS and the administrative record ("AR"), filed by defendant on February 12, 2014. For the reasons stated below, the decision of the Commissioner is affirmed.

/ / /

/ / /

/ / /

/ / /

**PROCEDURAL HISTORY**

On August 20, 2010, plaintiff applied for a period of disability and disability insurance benefits. (AR 123-24.) On August 30, 2010, plaintiff applied for supplemental security income benefits. (AR 125-33.) The applications were denied. (AR 78-79.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 89-91.) ALJ Alexander Weir III held a hearing on February 2, 2012. (AR 53-77.) Plaintiff appeared with counsel and testified at the hearing. (*Id.*) On March 19, 2012, the ALJ issued a decision denying benefits. (AR 22-38.) Plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 18-21.) The Council denied the request for review on July 15, 2013. (AR 1-6.)

Plaintiff filed the complaint herein on August 13, 2013.

**ISSUES**

Plaintiff raises a single issue:

1. Whether the ALJ properly considered plaintiff's mental limitations.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is

/ / /

susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A. Background.

1) The medical records.

Plaintiff has a history of numerous inpatient hospitalizations for psychiatric issues, beginning in the 1970s. (AR 204.) He was diagnosed with anxiety as early as 2002. (AR 259.) In 2003, he received emergency-room treatment for chest pain and shortness of breath. He was given nitroglycerin and Ativan (lorazepam) and discharged the same day. (AR 266-67.) Plaintiff was diagnosed with anxiety disorder NOS a month later. (AR 318.) In 2006, he obtained a refill for diazepam, which he was taking to treat his anxiety. (AR 282.)

Plaintiff alleges an onset date of December 18, 2008. (AR 55.) On December 19, 2008, he underwent an initial anxiety evaluation at LAC/USC. (AR 194-200.) He was diagnosed with anxiety disorder, NOS, rule out PTSD v. panic disorder, and assigned a GAF score of 60.[1] (AR 200.) He was prescribed hydroxyzine and Remeron (mirtazapine). (*Id.*)

---

[1] The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR"). Axis V is the Global Assessment of Functioning (the "GAF"), or, for persons under the age of 18, the Children's Global Assessment Scale. The GAF reports the clinician's judgment of the individual's overall functioning. *Id.* at 32-33. A GAF score of 51-60 indicates that the patient has "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

On August 25, 2009, plaintiff underwent an Adult Initial Assessment at West Central Mental Health Clinic ("WCMHC"). (AR 204-209.) He reported that his symptoms of insomnia, decreased appetite, and anxiety had returned. (AR 204.) He presented as anxious and he showed deficits in (*inter alia*) concentration and memory. (AR 208.) Plaintiff reported that he had a history of dropping out of outpatient treatment once he began to feel better. (AR 209.) He was diagnosed with panic disorder without agoraphobia and assigned a GAF score of 52. (*Id.*)

On January 7, 2010, plaintiff underwent a medication evaluation at WCMHC. (AR 210-12.) He presented with some dysphoria. He reported that he had suffered three panic attacks in the past year and had persistent concerns about having a panic attack. (AR 210-11.) Plaintiff continued on hydroxine, but his dosage of Remeron was increased. (AR 212.)

In a February 2, 2010 medication visit at WCHMC, plaintiff was euthymic and responding well to medication. (AR 216.) His adherence to his medication regimen was good. (*Id.*) On May 21, 2010, his mood was euthymic and he was "coping well" and responding well to medication. (AR 214-15.) He was euthymic and responding well to medication on August 13, 2010, although he was dealing with financial stressors. (AR 213.)

On December 16, 2010, plaintiff was grieving, as it was the anniversary of a family member's death. (AR 308.) He had a dysphoric mood and a sad affect. (*Id.*) He was responding well to his medication, but had not been adhering to his regimen. (*Id.*) He was directed to resume his medication regimen. (*Id.*) Plaintiff's medication response improved by his next visit, on March 11, 2011, and his mood was euthymic. (AR 307.) On June 3, 2011, plaintiff reported that he was stable on his medication and sleeping well. (AR 306.) His medication compliance was good and his mood was euthymic. (*Id.*)

/ / /

/ / /

On July 15, 2011, plaintiff received emergency treatment at Olympia Medical Center for what he described as the onset of a panic attack. (AR 291.) He complained of weakness, dizziness, shortness of breath, and numbness in his legs. (*Id.*) Valium improved his symptoms. (*Id.*) His examination was benign, and the attending physician concluded that he likely suffered from paresthesias secondary to an anxiety attack. (AR 292.) Plaintiff was discharged the same day with a prescription for Valium. (*Id.*; AR 299.)

In a September 30, 2011 psychiatric visit, plaintiff was restless and his mood was anxious. (AR 305.) He complained of not sleeping. (*Id.*) He and his treating source discussed his anxiety attack, his recent emergency room visit, and his life stressors. (AR 304.) The treating source continued plaintiff on his medication regimen. (*Id.*)

2) <u>The physician's opinions</u>.

Plaintiff underwent a psychiatric examination by Larisa Levin, M.D., on May 31, 2011. (AR 223-28.) Plaintiff presented with a dysphoric mood. (AR 226.) He reported to Dr. Levin, *inter alia*, that he was capable of managing his funds and taking care of his personal needs. (AR 225.) He could do household chores, run errands, shop, and cook. (*Id.*) He could focus attention, had no difficulty completing household tasks, and had no difficulty making personal decisions. (*Id.*) He liked to exercise and watch basketball with his friends, and he got along with his family and neighbors. (*Id.*) Plaintiff also reported that he had no extensive involvement with the legal system and had not been in jail or prison. (AR 224.)

Plaintiff's mental status examination demonstrated fair concentration and memory. (AR 227; *see* AR 225-26.) Dr. Levin diagnosed plaintiff with anxiety disorder, NOS, and assigned him a GAF of 55. (AR 227.) She opined that plaintiff would have "no functional limitations in his ability to work, from a psychiatric standpoint." (AR 228.)

/ / /

/ / /

/ / /

On June 14, 2011, a nonexamining psychiatrist concluded that plaintiff had mild limitations in activities of daily living; no limitations in maintaining social functioning; mild limitations in maintaining concentration, persistence, or pace; and had experienced no episodes of compensation of extended duration. (AR 239.)

In 2008, 2009, and 2010, WCMHC psychiatrists completed one-page forms stating that plaintiff was incapable of working due to anxiety disorder or panic disorder. (AR 286-88.)

3) Plaintiff's testimony.

At the February 2012 hearing, plaintiff testified that he suffered from severe panic attacks that required emergency treatment. (AR 58-59.) During a panic attack, he would suffer sweating, nausea, headache, increased heart rate, and faintness. (AR 59.) He last worked in 2002, and was forced to leave his last job because of his panic attacks. (AR 70.)

Plaintiff testified that prior to his December 2008 onset date, he had panic attacks about twice a week. (AR 60.) The frequency of his attacks decreased after he was prescribed trazodone and mirtazapine at USC. (AR 60-61, 62.) He had three panic attacks in 2009 and one the Saturday before the hearing. (AR 62, 71.) His last hospital admission for anxiety was the July 2011 visit to Olympia Medical Center. (AR 73-74.) Plaintiff testified that he was able to forestall full-blown panic attacks by using breathing techniques and taking medication. (AR 62-63.) However, the trazodone and mirtazapine made him groggy and interfered with his sleep. (AR 61.)

Plaintiff testified that he no longer socialized regularly. (AR 65.) He could take care of his personal needs, but tried not to drive alone in case he had a panic attack. (AR 64.) He had trouble with memory and concentration and had difficulty sleeping. (AR 61-62.)

Plaintiff testified that in 2008, a roommate pointed a gun at his head during a dispute. (AR 66.) Plaintiff left town and was arrested upon his return due to the roommate's claim that plaintiff had a gun. (AR 67.) Plaintiff was convicted of domestic

violence and making a terrorist threat. (AR 67-68.) He spent 16 days in jail and served three years of probation. (AR 68.)

3) The ALJ's decision.

The ALJ concluded that plaintiff had the medically determinable impairments of hypertension and anxiety disorder. (AR 28.) However, plaintiff's hypertension and anxiety disorder did not cause more than minimal limitations in plaintiff's ability to perform basic work activities. (AR 30-34.) Accordingly, plaintiff was not disabled, because he did not have an impairment or combination of impairments that qualified as "severe" under the Social Security regulations. (*Id.*)

Plaintiff contends that the ALJ erred in finding that his anxiety disorder was not severe. (JS 3-10, 25-27.) The Court finds that remand is not warranted.

B. Analysis.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits a claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities means "the abilities and aptitudes necessary to do most jobs." They include, *inter alia*, non-physical abilities such as the ability to understand and carry out simple instructions, to use judgment, and to respond appropriately to supervision. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

A determination that an impairment is not severe requires a "careful evaluation of the medical findings" which describe the impairment and an "informed judgment about its [] limiting effects on the individual's physical and mental ability[] to perform basic work activities . . . ." Social Security Ruling ("S.S.R.") 85-28, 1985 WL 56856 at *4. The ALJ may also consider the plaintiff's testimony about his symptoms in determining whether an impairment is severe, although symptoms will not justify a finding of severity in the absence of objective medical evidence. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

/ / /

In addition, in order to determine a mental impairment's severity, Social Security adjudicators utilize the so-called "psychiatric review technique." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Under the technique, adjudicators assess a claimant's mental restrictions in four broad functional areas: activities of daily living ("ADL"); social functioning; concentration, persistence, or pace; and episodes of decompensation (collectively, the "paragraph B" criteria).[2] 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the adjudicator finds that the claimant had no episodes of decompensation of extended duration and only mild limitations (or none at all) in the other functional areas, the adjudicator will generally conclude that the mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).[3]

Here, the ALJ properly determined that plaintiff's anxiety disorder was not severe. First, substantial evidence supports the ALJ's conclusion that the disorder did not meet the paragraph B criteria. (AR 32-33.) Plaintiff reported to Dr. Levin that he could do housework, run errands, manage his funds, *etc*. He made similar statements in an August 2010 function report (the "Function Report"). (AR 163-65.) And at the hearing, he admitted that he was able to take care of his personal needs, although he claimed that he did not drive.

Furthermore, plaintiff reported to Dr. Levin that he socialized with his friends and got along with his family and neighbors. In the Function Report, he stated that he socialized regularly with family and friends. (AR 165.) Although plaintiff claimed at the hearing that he no longer socialized, the ALJ was entitled to resolve the conflicts among

---

[2] Episodes of decompensation are exacerbations of or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning. 20 C.F.R. Part 404, subpt. P, app. 1, § 12:00(C)(4).

[3] The psychiatric review technique is summarized on the Psychiatric Review Technique Form, which the nonexamining physician used in assessing plaintiff's alleged mental impairment. *See* 20 C.F.R. §§ 404.1520a(e), 416.920a(e); *see also* AR 239.

plaintiff's varying accounts. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion"); *see also discussion*, *infra*. Although plaintiff was assigned GAF scores indicating moderate difficulties in functioning, they dated mainly from the outset of his WCMHC treatment. Therefore, ample evidence supported the ALJ's conclusion that plaintiff had only mild restrictions in ADL and no limitations in social functioning. (AR 33.)

Substantial evidence also supported the ALJ's conclusion that plaintiff had only mild limitations in concentration, persistence, and pace. (AR 33.) As noted above, plaintiff's mental status testing at Dr. Levin's examination demonstrated fair concentration and memory. In addition, he told Dr. Levin that could concentrate and manage his funds and had no problem finishing his chores. He stated in the Function Report that his hobbies included reading, which he did daily. (AR 165.) Although plaintiff claimed at the hearing that he had difficulty concentrating, the ALJ reasonably resolved the conflicting evidence.

As to episodes of decompensation, as the ALJ asserted (AR 32), plaintiff was hospitalized for anxiety only twice in the nine years prior to the hearing. In each of those episodes, plaintiff was discharged during the same 24-hour period, with conservative treatment in the form of medication. In light of these facts, the ALJ reasonably interpreted the record in finding that plaintiff had no episodes of decompensation of extended duration. (AR 33.)

The ALJ's conclusions found support in the physicians' opinions. As noted above, the nonexamining psychiatrist opined that plaintiff had mild limitations in ADL, no extended episodes of decompensation, and no other paragraph B limitations. Dr. Levin opined that plaintiff had no limitations in functioning. Although plaintiff's WCMHC psychiatrists opined that plaintiff was disabled, the ALJ properly discounted those opinions on the ground that they were "boilerplate" statements and were contrary to the great weight of evidence in the case. AR 32; *see Batson*, 359 F.3d at 1195 (ALJ properly

discounted treating physician's opinion where, *inter alia*, opinion was in form of checklist); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating doctor's opinion which was inconsistent with doctor's notes and not supported by any medical findings); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (ALJ may reject treating physician's contradicted opinion by provided specific, legitimate, record-supported reasons), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996). In sum, the ALJ properly found that plaintiff's anxiety disorder did not the criteria for a severe mental impairment under the psychiatric review technique.

Second, the ALJ properly found that plaintiff was generally not credible with respect to the severity of his subjective symptoms. (AR 31-33.) In the absence of evidence of malingering, an ALJ may reject a claimant's subjective claims upon providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (internal quotation marks omitted).

Here, plaintiff himself testified that after he went on medication, his panic attacks decreased in frequency from one or two per week to only four since the onset date. He further stated that he was able to forestall attacks with medication and breathing. In addition, once his treatment at WCMHC was underway, plaintiff's treating sources consistently reported that he was responding well to medication, coping well, and presenting with a euthymic mood. Plaintiff's few instances of dysphoric mood coincided with the failure to keep to his medication regimen and/or with infrequent life stressors. And as noted, plaintiff had only one brief hospitalization for anxiety during the insured period.

Although plaintiff urges a different interpretation of his treating records (AR 8-9), the ALJ reasonably concluded that the objective medical evidence was inconsistent with a severe impairment. AR 33; *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (ALJ tasked with resolving conflicts and ambiguities in medical record). And although an ALJ may not premise the rejection of the claimant's testimony regarding subjective symptoms *solely* on the lack of medical support, *Lester*, 81 F.3d at 834, weak objective support does undermine subjective complaints of disabling symptoms, *see Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1998). Moreover, an impairment that can effectively be controlled by medication cannot serve as a basis for finding a disability. *Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Furthermore, as discussed above, plaintiff engaged in a wide range of ADL without difficulty. As the ALJ reasoned (AR 33), this further undermined his subjective claims. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (plaintiff's ability to engage in activities that would translate to work setting contravenes claims of disabling pain). So did his claim, to Dr. Levin, that he had not spent time in jail or prison, as plaintiff had in fact served 16 days in jail. Moreover, his claim not to any extensive involvement with the legal system was evasive at best.[4] *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining credibility, factfinder may consider conflicts between claimant's statements and rest of evidence).

---

[4] The ALJ also held that plaintiff's felony conviction, in itself, demonstrated his capacity for "deceptive and dishonest" behavior. The Court harbors some doubt on this point. *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (asserting that rationale should be limited to convictions involving moral turpitude; "mere assault convictions are not a proper basis for the ALJ's adverse credibility finding"). However, the record demonstrates that plaintiff was not truthful to Dr. Levin about his criminal record. His relative openness at the hearing does not cancel out his earlier prevarication.

The ALJ also cited plaintiff's "sporadic" treatment over the years as grounds for rejecting his subjective claims. AR 33; *see Burch*, 400 F.3d at 681 (evidence of lack of treatment sufficient to discount testimony regarding impairment's severity). Plaintiff contends that he had a valid reason – a lack of health insurance – for the delay in treatment between his December 2008 visit to LAC/USC and his August 2009 initial visit at WCMHC. (JS 6.) He also argues that he received regular treatment at WCMHC. (JS 6-7.) Plaintiff is correct in asserting that an ALJ may not find a plaintiff incredible for not seeking treatment where the plaintiff could not afford it. *See Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). However, the Court finds that any error in the ALJ's characterization of plaintiff's treatment was harmless, as the ALJ provided numerous valid, record-supported reasons for finding plaintiff incredible.

In sum, the ALJ properly determined that plaintiff's anxiety disorder was nonsevere. Accordingly, remand is not warranted.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: December 9, 2014

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge